UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Morgan Wright, | File No. 23-cv-2646 (ECT/TNL) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| The Travelers Home and Marine Insurance Company, | |
| Defendant. | |

Frederic W. Knaak, Holstad & Knaak, PLC, St. Paul, MN, for Plaintiff Morgan Wright.

M. Gregory Simpson, Leatha G. Wolter, and Thomas Joseph Joyce, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Defendant The Travelers Home and Marine Insurance Company.

In August 2021, a water pipe above Plaintiff Morgan Wright's residence burst, causing extensive damage to the residence and to Ms. Wright's personal property. At the time, the residence was insured under a policy issued by Defendant, The Travelers Home and Marine Insurance Company. Ms. Wright filed a claim with Travelers. In this case, Ms. Wright alleges that Travelers breached the policy and discriminated against her based on her disabilities in its response to the claim.

Two matters require adjudication. Travelers seeks dismissal of Ms. Wright's operative original Complaint under Federal Rule of Civil Procedure 12(b)(6), and Ms. Wright seeks reversal of Magistrate Judge Tony N. Leung's order denying her motion for leave to amend her Complaint.

Travelers' Rule 12(b)(6) motion will be granted, and Magistrate Judge Leung's order will be affirmed. The Complaint lacks essential legal and factual support. And Magistrate Judge Leung was right to deny the motion for leave to amend because the proposed amendment would be futile. Because some claims might conceivably be repleaded with success, Ms. Wright will be given the opportunity to file an amended complaint. If she chooses not to pursue that course, the operative Complaint will be dismissed with prejudice, and judgment will be entered.

I

A

Before turning to the facts, it is necessary to resolve the parties' dispute regarding the universe of factual sources that may be considered in deciding Travelers' Rule 12(b)(6) motion. The general rule is that the facts are taken from the Complaint, and all reasonable inferences are drawn in Ms. Wright's favor. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, but not when the relevant materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). Materials embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (citation omitted); *see Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in

2

determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[,]' without converting the motion into one for summary judgment." (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004))).  Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

Here, in addition to the Complaint, Travelers seeks to have facts considered as part of its Rule 12(b)(6) motion that are drawn from five documents.  The short story is that some of these documents (and the facts in them) may be considered while others cannot: (1) The applicable policy is fair game.  It is an exhibit to the Complaint, *see* Compl. [ECF No. 1-1] Ex. A, and no party questions that the exhibit is an authentic copy of the policy.[1] (2) Ms. Wright's sworn proof-of-loss statement appropriately may be considered.  ECF No. 7-2.  The Complaint alleges that Ms. Wright "gave timely notice . . . of . . . her loss" as the policy required.  Compl. ¶ 16.  The "timely notice" to which this allegation refers

---

[1]     The Complaint and policy were filed together as a single document on CM/ECF. *See* ECF No. 1-1.  The Complaint appears at pages 1–12 of ECF No. 1-1.  As noted, the policy is "Exhibit A" to the Complaint; it runs from pages 13–56 of ECF No. 1-1.  In this Opinion and Order, the Complaint will be cited primarily by reference to paragraphs.  The policy will be cited by reference to ECF pagination appearing in the document's upper right-hand corner, not to the document's original pagination.

could only be Ms. Wright's proof-of-loss statement.   The statement thus falls in that category of documents whose contents are alleged or incorporated by reference in the Complaint, and Ms. Wright does not question the document's authenticity.  (3) The same is true of the appraisal award.  ECF No. 7-3.  The Complaint alleges that appraisal occurred (though it mistakenly refers to the appraisal as "arbitration"), Compl. ¶ 24, and Ms. Wright does not dispute the authenticity of the award Travelers filed.  (4) It seems inappropriate to consider the "Financial Detail" document purporting to show the history of payments Travelers has made to Ms. Wright.  ECF No. 7-4.  One of Ms. Wright's allegations supporting her breach-of-contract claim is that Travelers has refused to pay what it owes on her claim.  Compl. ¶ 36.  If Travelers' point is that the Financial Detail document shows something different—*i.e.*, that it has paid what it owes—that would require rejecting the Complaint's contrary allegation.  That, in turn, would violate the fundamental rule that in reviewing a Rule 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog*, 760 F.3d at 792 .  (5) Beyond these four documents and their content, Travelers seeks to introduce several additional facts through the declaration testimony of Susana Blumenthal, the "claim handler" for Ms. Wright's claim.  Blumenthal Decl. [ECF No. 7] ¶¶ 1, 3–4, 6, 9–10.  What relevance these facts hold for Ms. Wright's claims or Travelers' Rule 12(b)(6) motion is not obvious.  Regardless, the facts Ms. Blumenthal describes would either contradict or add to the Complaint's allegations in ways that would benefit Travelers.  These additional assertions will therefore not be considered.  With these issues resolved, turn to the facts.

B

*Ms. Wright.*  Ms. Wright lives in Minneapolis.  Compl. ¶ 1.  She is a Juilliard-trained pianist and professional musician.  *Id.* ¶ 11.  She keeps a "very high-quality" piano in her residence; she uses the piano for daily practice and to teach private piano lessons.  *Id.*  Ms. Wright has multiple, permanent disabilities resulting from the removal of a cancerous brain tumor.  *Id.* ¶ 12.  These include "a severely compromised immune system, diagnosed PTSD with attendant panic attacks, major depression and numerous forms of migraine headaches, including hemiplegic and cluster migraines."  *Id.*  Ms. Wright's disabilities cause her to be sensitive to sounds, smells, and movement, and she holds "extreme intolerance of crowds and overstimulation arounds groups of people."  *Id.*

*The property-damaging event.*  The property-damaging event occurred August 8, 2021, when "a water pipe burst in the unit immediately above [Ms. Wright's], . . . inundating her dwelling with eight inches of water that covered the floor, [and] soaked the ceiling and many of the walls in her unit."  *Id*. ¶ 14.  The water "soaked all rugs and carpeting," the piano, and furniture.  *Id.*  The water "shorted out [Ms. Wright's] refrigerator" and left her kitchen non-functioning.  *Id.*[2]  The next day, "an emergency mitigation service company was brought in by the Homeowners Association."  *Id.* ¶ 15.

---

[2]      The Complaint's allegations are somewhat vague about whether the water caused Ms. Wright's kitchen to be non-functioning or if the kitchen was non-functioning before then.  The Complaint alleges: "*As of the time of the Event*, Plaintiff no longer had a functioning kitchen."  Compl. ¶ 14 (emphasis added).  This allegation could be understood two ways.  It could be understood to say that Ms. Wright did not have a functioning kitchen before water damaged her residence.  Or it could be understood to say that the water intrusion caused her kitchen to become non-functioning.  Consistent with the Rule 12(b)(6) standards, the allegation will be construed in Ms. Wright's favor to mean the latter.

Among other activities, the mitigation service company used "large commercial fans to ventilate" the premises. *Id.* The fans' use caused Ms. Wright to experience "one seizure and multiple debilitating migraine headaches." *Id.* Ms. Wright's unit "experienced very high humidities as a result of the water intrusion for weeks thereafter." *Id.*

*The policy.* Ms. Wright's residence was insured by a Travelers-issued "Homeowners Condo Policy." *See id.* Ex. A. The policy provided the following coverage limits: (1) for the dwelling, up to $106,500; (2) for personal property, up to $122,500; and (3) for the dwelling's loss of use, up to $61,250. *Id.* at 14. Travelers does not dispute that Ms. Wright suffered a covered loss with respect to (1) her dwelling and (2) her personal property. With respect to the dwelling's loss-of-use coverage, the policy provided:

> **Additional Living Expense.** If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standing of living. . . .
>
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

*Id.* at 35. The policy required Travelers to "adjust all losses" and pay 60 days after Travelers received proof of loss and one of the following occurred: (a) Travelers and Ms. Wright agreed on the amount of loss; (b) a final judgment was entered; or (c) an appraisal award was filed with Travelers. *Id.* at 45. Regarding appraisal, the policy described the following process:

> If [the parties] fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will

> choose a competent and impartial appraiser within 20 days
> after receiving a written request from the other.  The two
> appraisers will choose an umpire. . . .  The appraisers will
> separately set the amount of loss.  If the appraisers submit a
> written report of an agreement to us, the amount agreed upon
> will be the amount of loss.  If they fail to agree, they will submit
> their differences to the umpire.  A decision agreed to by any
> two will set the amount of loss.

*Id*.

*Ms. Wright's proof of loss.*  Ms. Wright submitted a proof of loss dated October 31, 2022.  ECF No. 7-2 at 2.  Ms. Wright signed the document "under penalty of perjury" that the information she provided in the form was "true and correct."  *Id.*  Ms. Wright's signature was witnessed and notarized by her counsel.  *Id.*  Broadly speaking, Ms. Wright described two categories of losses in her statement.  First, she described numerous items of personal property that were damaged in the event, including her piano.  *Id.* at 2–4 (indicating value of lost personal property to be "$34,315.66 + piano").  Second, Ms. Wright claimed that the damage to her residence amounted to "$165,000.00."  *Id.* at 2.  Ms. Wright included no claim for additional living expenses under the policy's loss-of-use provisions.  *See generally id.*

*The Complaint's distinct loss allegations.*  The Complaint alleges greater losses in comparison to, or losses that were not identified in, Ms. Wright's proof-of-loss form.  The Complaint alleges that, though Ms. Wright initially had difficulty finding a contractor to bid on the repair to her "damaged home and its fixtures" owing to the COVID-19 pandemic, she eventually received a contractor's estimate "that restoration of her premises would cost

$199,315.66." Compl. ¶ 17.[3]  The Complaint seems to acknowledge that Travelers paid Ms. Wright $90,870.63 "for a replacement for her piano."  *Id.* ¶ 20.  The Complaint also alleges, however, that this amount did not include Ms. Wright's "loss of income for the period in which she waited for payment of the destroyed piano part of her claim." *Id.* ¶ 20; *see also id*. ¶ 18 ("During the period between when the Event damaged the piano beyond repair and when a replacement piano was purchased for Plaintiff, she was without principal means of employment.").  Ms. Wright alleges Travelers took "six months" before it "agreed to pay for another piano."  *Id.* ¶ 18.  And the Complaint alleges that Ms. Wright asked Travelers to relocate her to another residence while her unit was being repaired due to "health difficulties" she was experiencing "related to the humidity and condition of her home," but that Travelers "categorically refused."  *Id.* ¶ 21.  As a result, the Complaint alleges, Ms. Wright "continue[d] to experience . . . health problems as she [was] forced to remain on the premises awaiting full repairs."  *Id*.

*The appraisal award.*  Because the parties disputed the loss amount, Ms. Wright demanded appraisal.  *Id.* ¶ 24.  The appraisal panel issued its award on August 4, 2023. ECF No. 7-3.  Appraiser Raymond Pawlak and Umpire Walt Cook determined a "Loss Replacement Cost Value" of $38,418.41 for property damage and $113,214.02 for personal

---

[3]      This could just be a mistake.  The two loss numbers from Ms. Wright's proof-of-loss form—$34,315.66 for personal property excluding the piano and $165,000.00 for repairs to the unit—add up to $199,315.66.

property, and a "Loss Actual Cash Value" of $31,349.42 for property damage and $101,680.44 for personal property. *Id.* at 2.[4]

*The disability-discrimination allegations.* The Complaint alleges that Travelers knew of Ms. Wright's disabilities. Compl. ¶ 13. The Complaint also alleges that Travelers' claim handler, Ms. Blumenthal, was "threatening and abusive in her communication with [Ms. Wright] in a manner in which was [sic] clearly intended to be intimidating and taking advantage of [Ms. Wright's] disabilities." *Id.* ¶ 23. The Complaint alleges that Ms. Blumenthal "made a manifestly grossly inadequate offer of settlement, using a represented layout of [Ms. Wright's] home that was clearly for the wrong unit." *Id.* The Complaint also alleges that Travelers' "pattern of paying out smaller amounts" on Ms. Wright's claim was "part of a pattern of behavior" that "sought to use [Ms. Wright's] disabilities against her to pressure a quick and, for [Ms. Wright], unfair resolution" of her claim. *Id.* ¶ 22.

*The claims asserted and relief sought.* There are three counts in the Complaint. (1) The first seeks declaratory judgments that the policy covered Ms. Wright's losses, that "amounts that may have been actually paid to date by [Travelers] are far below the value of [Ms. Wright's] losses," and that Ms. Wright is entitled to a trial to seek recovery of "the full value of her losses." *Id.* ¶¶ 27–31 (Count I). (2) The second asserts a breach-of-contract claim on the theory that Travelers "has refused or otherwise failed to fully pay all

---

[4]     For an explanation of the ordinary meanings of "replacement cost value" and "actual cash value," see *Selective Insurance Co. of South Carolina v. Sela*, 455 F. Supp. 3d 841, 844 (D. Minn. 2020), and *Creekview of Hugo Association, Inc. v. Owners Insurance Co.*, 386 F. Supp. 3d 1059, 1061–62 (D. Minn. 2019). These ordinary meanings are consistent with the terms as used in the Travelers policy.

damages suffered by [Ms. Wright] . . . and in not doing so has breached" the policy. *Id.* ¶ 36; *see id.* ¶¶ 32–37 (Count II).  (3) The third asserts a disability-discrimination claim, though the Complaint does not identify the source of law underlying the claim. *Id.* ¶¶ 38– 43 (Count III).  The Complaint alleges theories that Travelers failed to accommodate Ms. Wright's disabilities, that Ms. Blumenthal was "intentionally, directly and personally abusive to [Ms. Wright] in a manner that triggered physical symptoms related to her disability," and that Travelers' delay in resolving the claim was intended "as a means of weakening [Ms. Wright's] resolve in fairly settling her claim and to reduce the amount otherwise owed" by Travelers on the claim. *Id.* ¶¶ 39, 40, 42.  For relief, Ms. Wright seeks a coverage declaration, a finding that Travelers engaged in disability discrimination, the "maximum allowed" coverage amounts under the policy, "consequential damages" caused by Travelers' failure to "promptly resolve" Ms. Wright's claim, and "any allowed attorney's fees under State or Federal law, for egregiously discriminatory conduct against [Ms. Wright] by taking advantage of [her] known disability." *Id.* at 10, ¶¶ 1–5 (following the "**WHEREFORE**" clause); *see also id.* ¶ 37.

C

The case's procedural history deserves a brief summary.  Ms. Wright filed her Complaint in Hennepin County District Court on August 7, 2023, *see* Compl. at 1 (filing stamp in upper right corner), and served Travelers with the Complaint on August 10, Notice of Removal [ECF No. 1] ¶ 1.  Travelers timely removed the case to this federal district court on August 28, alleging the presence of diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  *Id.* ¶¶ 3–4.  Travelers filed its Rule 12(b)(6) motion on September 5.  ECF

10

No. 4.  Ms. Wright filed her memorandum of law in opposition to Travelers' motion on September 26.  ECF No. 11.

One week later, on October 3, Ms. Wright filed a motion seeking leave to amend her Complaint to add a "bad faith" claim under Minn. Stat. § 604.18.  ECF No. 14. Magistrate Judge Tony N. Leung heard argument on Ms. Wright's motion on October 17, and he denied the motion from the bench, explaining his reasons on the record.  *See* ECF Nos. 23, 30.  Ms. Wright appealed Magistrate Judge Leung's decision on October 31.  ECF No. 28.

A hearing on both matters—Travelers' Rule 12(b)(6) motion and Ms. Wright's appeal of Magistrate Judge Leung's denial of her motion to amend—was scheduled for December 4, 2023.  ECF No. 34.  The hearing began as scheduled.  Present were Ms. Wright, counsel for Ms. Wright, and counsel for Travelers.  Midway through the hearing, as Travelers' counsel was presenting argument, Ms. Wright experienced a health situation that necessitated medical attention.  The hearing was adjourned.  Rather than reschedule or continue the hearing to a later date, the motions were taken under advisement based on the parties' written submissions and what argument occurred to that point.  ECF No. 34.  No party has objected to this approach.

## II

### A

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog*, 760 F.3d at 792.  Although the factual allegations

need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).   The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

B

1

The declaratory judgment claim will be dismissed.   Judge Nancy Brasel well-described the law governing this question in *American Achievement Corp. v. Jostens, Inc.*:

> Declaratory relief is discretionary "and an important factor in exercising that discretion is whether the declaratory judgment plaintiff has another, more appropriate remedy." *Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1004 (8th Cir. 2012) (citations omitted).   Thus "[a] redundant declaratory judgment claim . . . should be dismissed." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 152 F.R.D. 580, 582 (D. Minn. 1993) (citing *Aldens, Inc. v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975)).   But a declaratory judgment claim is not redundant just because it is closely related. *See* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").   The inquiry is whether resolving one claim "would resolve all questions raised" by the other. *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, 871 F. Supp. 2d 843, 862 (D. Minn. 2012) (quotation marks and citation omitted).

12

622 F. Supp. 3d 749, 766 (D. Minn. 2022); *see Daum v. Planit Sols., Inc*., 619 F. Supp. 2d 652, 657 (D. Minn. 2009) ("When a request for a declaratory judgment alleges duties and obligations under the terms of a contract and asks the court to declare those terms breached, it is nothing more than a petition claiming breach of contract." (cleaned up)).

Here, the declaratory judgment claim seeks no relief that might conceivably be distinct from the breach-of-contract claim. The claim seeks declarations that the policy covers Ms. Wright's losses, Compl. ¶¶ 28–29, and that Ms. Wright "is entitled to receive the full value of her losses as may be established at trial in addition to any prior payments thereon," *id.* ¶ 31. That is the same relief Ms. Wright seeks via the breach-of-contract claim. *See id.* ¶ 35 ("The property damages sustained by [Ms. Wright] as the result of the Event were all losses covered by the Insurance Policy."); ¶ 36 ("[Travelers] has refused or otherwise failed to fully pay all damages suffered by [Ms. Wright] as the result of the Event and in not doing so has breached the terms of the Insurance Policy and Minnesota State Law."). In other words, resolving the breach-of-contract claim would resolve all questions raised by the declaratory judgment claim.

2

Under Minnesota law, a breach-of-contract claim requires: "(1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages." *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D. Minn. 2006) (citation omitted); *see Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (same). The first two elements are not in dispute. The issues are whether the Complaint alleges facts plausibly showing a breach by Travelers and

Ms. Wright's damages.   The short answer is that the Complaint does not allege facts plausibly showing a breach.

Begin by identifying the Complaint's breach theories.   There seem to be three: (a) The Complaint acknowledges that Travelers "agreed to pay for another piano."  Compl. ¶ 18.   It alleges, however, that Travelers' delay in paying for a new piano caused Ms. Wright a "loss of income for the period in which she waited for payment of the destroyed piano part of her claim." *Id.* ¶ 20.  (b) The Complaint alleges that Ms. Wright "experienced health difficulties related to the humidity and condition of her home" following the occurrence.  *Id.* ¶ 21.   It alleges she "requested to be relocated to another residence" while the property was repaired, but that Ms. Blumenthal "categorically refused to do so."  *Id.* ¶ 21.   Though the Complaint is not explicit on the point, the evident inference is that Ms. Wright should recover some amount for the "health difficulties" she experienced.  (c) The Complaint alleges generally that Travelers "has refused or otherwise failed to fully pay all damages" caused by the occurrence.  *Id.* ¶ 36.   The safer inference is that this general allegation concerns amounts in addition to the first two breach categories—*i.e.*, the piano/loss-of-income category and the relocation/health difficulties category—though the Complaint does not identify what other amounts fall in this category.

(a) The Complaint does not plausibly allege that Travelers breached the policy by delaying payment for the piano or by refusing to pay for Ms. Wright's loss of income associated with the delay.  As noted, the policy required Travelers to pay 60 days after Travelers received proof of loss and either Travelers and Ms. Wright agreed on the amount of loss, a final judgment was entered, or an appraisal award was filed with Travelers.  *Id*.

Ex. A at 45.  The Complaint alleges Travelers paid Ms. Wright for the loss of her piano,
*see id.* ¶¶ 18–20, but it does not allege that any of these triggering events occurred more
than 60 days before Travelers paid Ms. Wright for this loss.  The Complaint identifies no
other contractual deadline that might apply.  An independent, cover-to-cover review of the
policy identified no other deadline, either.  If that weren't so—that is, assuming Travelers'
piano payment was late—the Complaint identifies no policy provision that might plausibly
be construed to provide coverage for Ms. Wright's loss of income (associated with her lack
of a piano or otherwise), and the Complaint identifies no other damages stemming from
Travelers' delay.

(b) The Complaint does not plausibly allege that Travelers breached the policy by
"categorically refus[ing]" Ms. Wright's relocation request.  *Id.* ¶ 21.  No policy provision
required Ms. Wright to seek Travelers' permission to relocate.  No provision required
Travelers to respond to such a request.  If Travelers had no contractual duty to respond to
such a request, it is difficult to understand how a "yes" or "no" answer (or a "categorical
refusal") might have breached the policy.  To support this theory, Ms. Wright relies on the
policy's "Loss of Use" coverage.  This coverage was triggered if "a loss . . . to covered
property . . . makes the 'residence premises' not fit to live in," at which point Travelers
would "cover any necessary increase in living expenses *incurred by*" the insured "so that
[the insured's] household can maintain its normal standard of living."  Compl. Ex. A at 35
(emphasis added).  This provision gave Ms. Wright the ability to incur additional expenses
and entitled her to recover those expenses provided they were necessary to enable Ms.
Wright to maintain her "normal standard of living."  *Id.*  A contractual breach would have

occurred, if at all, upon Travelers' refusal to pay these expenses. Here, assuming Ms. Wright's residence was "not fit to live in," the Complaint does not allege that Ms. Wright incurred any increase in living expenses. It does not allege, for example, that Ms. Wright relocated to a different, temporary residence or that she provided Travelers with "[r]eceipts for additional living expenses incurred" in connection with any relocation. *Id.* at 44. Nor does it allege that Ms. Wright ever submitted a claim to Travelers for such incurred expenses. In other words, the Complaint does not allege that Ms. Wright incurred any of the expenses covered by this provision. Perhaps some plausible legal theory might be alleged based on Ms. Blumenthal's alleged refusal to authorize Ms. Wright to relocate, but it is difficult to understand how that might be a breach-of-contract claim.

The health-related damages the Complaint seeks for Travelers' refusal to grant Ms. Wright's relocation request raise another problem. Under Minnesota's independent-duty rule, "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract 'constitutes or is accompanied by an independent tort.'" *Russo*, 462 F. Supp. 2d at 994 (quoting *Wild v. Rarig*, 234 N.W.2d 775, 789 (1975)); *see also Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 343 (Minn. Ct. App. 1997) (same). "While the Minnesota courts have recognized that an insurer owes its insured a duty of good faith, such duty has never been expressed as a tort duty." *Cherne*, 472 N.W.2d at 343 (citing cases). Here, the Complaint identifies no independent tort.[5]

---

[5]    The Complaint alleges that the use of "large commercial fans to ventilate" the residence caused Ms. Wright to suffer "at least one seizure and multiple debilitating

(c) The Complaint does not plausibly allege a breach through its catch-all allegation that Travelers "has refused or otherwise failed to fully pay all damages" caused by the occurrence. Compl. ¶ 36. It is true that a general allegation of this sort might work in some cases. Consider, for example, a fire-insurance coverage case where the insurer denied coverage outright on the ground that the fire resulted from arson. In that kind of case, an insured would not have to allege anything more than that the insurer "refused or otherwise failed to pay" amounts owed under the policy because the alleged breach would lie in the insurer's allegedly flawed justification to deny coverage. This isn't that kind of case. Here, the Complaint does not allege that Travelers denied coverage outright; it alleges that Travelers has paid some amounts. *See id.* ¶¶ 18–20, 22. And there was an appraisal award. *See id.* ¶ 24; ECF No. 7-3. The Complaint does not describe what amounts Travelers has not paid or allege why Travelers' failure to pay those amounts breached the policy. And the Complaint neither challenges the appraisal award nor alleges that Travelers has not paid amounts due under the award. *See generally* Compl. In these circumstances, a general allegation that "Travelers hasn't paid what it owes" does not plausibly show a breach. It asserts a legal conclusion. *Iqbal*, 556 U.S. at 678. To allege a plausible breach on this case's facts, the Complaint would have to identify unpaid amounts and tether an allegation that those amounts are owed to a policy provision.

---

migraine headaches." Compl. ¶ 15. But the Complaint does not attribute this equipment's use to Travelers. It alleges the fans were employed by "an emergency mitigation service company . . . brought in by the Homeowners Association" to which Ms. Wright belonged. *Id.* ¶ 15.

3

The Complaint does not allege a plausible disability discrimination claim because it nowhere identifies the legal authority on which the claim might be based. The Complaint does not allege, for example, whether the claim arises under federal, state, or local law, or under what statute or other authority the claim is asserted. *See* Compl. ¶¶ 38–43. In her memorandum of law in opposition to Travelers' Rule 12(b)(6) motion, Ms. Wright represents that the conduct alleged in the Complaint is prohibited by the Minnesota Human Rights Act ("MHRA") and a Minneapolis ordinance. Pl.'s Mem. in Opp'n [ECF No. 11] at 7. But a complaint cannot be amended through a brief. *See Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014); *Madgett L., LLC v. Pravati Cap., LLC*, No. 23-cv-1271 (NEB/JFD), 2023 WL 9509936, at *5 n.8 (D. Minn. Dec. 14, 2023).[6]

---

[6]     Had the Complaint asserted these claims, there would have been issues. Claims under the MHRA subsection Ms. Wright cited in her brief, Minn. Stat. § 363A.17, subdiv. 3, are subject to a one-year limitations period, Minn. Stat. § 363A.28, subdiv. 3(a). Ms. Wright did not bring her claim within this period. In her brief, Ms. Wright suggested that a continuing-violations theory and a complaint she filed with the Department of Commerce regarding Travelers' claims-handling tolled the limitations period. Pl.'s Mem. in Opp. at 7. These suggestions are questionable. The Complaint alleges no discriminatory conduct within the one year preceding this case's filing. *See Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 70–71 (Minn. 2020). And Ms. Wright cited no tolling statute or other authority applicable to claims filed with the Department of Commerce. The Minneapolis ordinance Ms. Wright cited, Minneapolis, Minn., Code of Ordinances ("MCO") § 139.40(l), also is subject to a one-year limitations period, MCO § 141.50(a), but Ms. Wright did not address the tolling question specifically with respect to this ordinance.

III

Next consider Ms. Wright's appeal of the order denying her motion for leave to amend.  Ms. Wright's proposed amendment was not intended to address the deficiencies identified in Travelers' Rule 12(b)(6) motion.  Instead, Ms. Wright sought to amend her Complaint to add a bad faith claim under Minnesota's Insurance Standard of Conduct statute, Minn. Stat. § 604.18.  *See* Proposed Am. Compl. [ECF No. 16] ¶¶ 44–49.[7]  "To make a bad faith claim [under § 604.18], the insured must establish both that [1] the insurer lacked a reasonable basis for denying the insurance benefits and [2] that the insurer knew it lacked a reasonable basis for denying benefits or acted in reckless disregard of the lack of a reasonable basis."  *Wobig v. Safeco Ins. Co. of Ill.*, 40 F.4th 843, 848 (8th Cir. 2022) (citing *Peterson v. W. Nat'l Mut. Ins. Co.*, 946 N.W.2d 903, 909–10 (Minn. 2020)).  In her Proposed Amended Complaint, Ms. Wright sought to establish these elements by focusing on Travelers' alleged refusal to approve her request to relocate while her residence was being repaired.  The Proposed Amended Complaint alleged "[t]hat no reasonable basis existed for the denial of the benefit provided for in the policy to pay for relocating [Ms. Wright] during the period her home was being repaired," and that Travelers "knew of the

---

[7]    To be clear, after Travelers filed its Rule 12(b)(6) motion on September 5, Ms. Wright had a 21-day window in which to file her Proposed Amended Complaint as a matter of course, or until September 26.  Fed. R. Civ. P. 15(a)(1)(B).  Ms. Wright either chose not to take advantage of that right or perhaps missed that deadline, requiring her to obtain "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  This procedural path delayed consideration of Travelers' Rule 12(b)(6) motion and hindered the case's efficient adjudication.

lack of any such reasonable basis for denying this benefit . . . or . . . recklessly disregarded its lack of a reasonable basis for its denial."  Proposed Am. Compl. ¶¶ 47, 48.

Magistrate Judge Leung denied the motion to amend on futility grounds.  "'A district court's denial of leave to amend a complaint may be justified if the amendment would be futile.'"  *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013)).  "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'"  *Id.* (quoting *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)).  Magistrate Judge Leung found that Ms. Wright had failed to allege facts plausibly showing that her residence was "uninhabitable to entitle her to additional living damages" under the policy's Loss of Use provision and that, regardless, Ms. Wright did not ask for additional living expenses in her sworn proof-of-loss statement.  Tr. [ECF No. 30] at 29–30.

Typically, a district court reviews an appeal of a magistrate judge's order on a nondispositive pretrial matter, such as a motion for leave to amend a complaint, under a deferential standard of review.  *Magee v. Trs. of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013).  Under that standard, a district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).  But when reviewing a magistrate judge's futility-based denial of a motion for leave to amend a pleading, the district court reviews the futility determination de novo.  *See Magee*, 957 F. Supp. 2d at 1062; D. Minn. LR 72.2(a)(3)(B).

For reasons already discussed, the decision to deny Ms. Wright's motion for leave to amend was correct.  Leaving aside whether Ms. Wright alleged facts plausibly showing that her residence was not habitable, she has not plausibly alleged that Travelers breached the policy's Loss of Use provisions.  *See supra* at 15–17.  To summarize, Ms. Blumenthal's refusal to pre-approve Ms. Wright's relocation request did not breach the Loss of Use provision because the provision contemplated no such pre-authorization.  Ms. Wright made no claim for "any necessary increase in living expenses incurred by [her]" contemplated by the Loss of Use provision that Travelers might have denied.  Compl. Ex. A at 35.  And Ms. Wright has not alleged the presence of some independent tort that might plausibly justify the health-related tort damages she seeks.  From Ms. Wright's failure to allege facts plausibly showing a breach of the Loss of Use provisions, it follows logically that Ms. Wright cannot plausibly allege that Travelers lacked a reasonable basis for its handling of the claim in this respect.

## IV

There is a question whether Ms. Wright's Complaint should be dismissed with or without prejudice.  Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal.  *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019).  A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting report and

recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. 3d at 880 n.7.  On the other hand, when a plaintiff's claims "might conceivably be repleaded with success," dismissal without prejudice may be justified.  *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

The better answer is to dismiss the Complaint without prejudice and allow Ms. Wright the opportunity to file an amended pleading in which she may attempt to cure some of the dismissal-worthy problems identified here.  One problem with the breach-of-contract claim is factual in nature.  That is, the Complaint does not identify unpaid amounts or connect those to a policy provision that required Travelers to pay them.  This problem might conceivably be remedied through additional factual allegations.  And perhaps repleading might be capable of addressing the legal deficiencies associated with Ms. Wright's claim based on Travelers' alleged denial of her relocation request and her disability discrimination claim.  If Ms. Wright opts not to file an amended pleading by the prescribed deadline, the original Complaint will be dismissed with prejudice, and final judgment will be entered.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     Defendant The Travelers Home and Marine Insurance Company's Motion to Dismiss [ECF No. 4] is **GRANTED**.

2.      Plaintiff Morgan Wright's objections to Magistrate Judge Leung's Order denying leave to amend her complaint [ECF No. 28] are **OVERRULED**.

3.      The Complaint is **DISMISSED WITHOUT PREJUDICE**.

4.      On or before February 23, 2024, Plaintiff Morgan Wright may file an amended complaint.  If no amended complaint is filed by that deadline, judgment will be entered dismissing the Complaint with prejudice, and final judgment will be entered.

Dated: February 8, 2024                          s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court